**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

John Doe,

                Plaintiff,                              **Case No. 2:15-cv-2996**

    v.                                             **Judge Graham**

The Ohio State University, et al.,              **Magistrate Judge Kemp**

                Defendants.

## OPINION AND ORDER

Plaintiff John Doe seeks to enjoin, on due-process grounds, a preliminary meeting with officials of The Ohio State University ("OSU") to discuss alleged infractions of its Student Code of Conduct. Because, among other things, Doe is unlikely to succeed on the merits of his claims, the Court DENIES Doe's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 3).

"In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). Because the Court refuses Doe's requested interlocutory injunction, what follows are the Court's findings of fact and conclusions of law supporting the denial, as required by Rule 52.

## I.    Findings of Fact

### A.  Procedural History

Doe brings this action for: (1) a declaratory judgment that OSU lacks jurisdiction to investigate him and that in doing so it violated the United States and Ohio Constitutions and its own Sexual Harassment policy; (2) an injunction prohibiting the investigation of, or reporting of,

any disciplinary or investigatory actions against Doe; and (3) damages, costs, and attorney's fees. (Verified Am. Compl. at 9–13, doc. 13).

Doe filed his Motion for a Temporary Restraining Order and Preliminary Injunction on November 16, 2015. Doe sought to enjoin a "preliminary conference" set to be held with OSU officials on November 19, 2015. The Court held an initial telephone conference on November 17, 2015. The parties then agreed to postpone the preliminary conference, giving the parties ample time to research and brief the issues presented in the Verified Amended Complaint and the Motion and giving the Court time to arrive at a reasoned decision. The matter is fully briefed and ripe for decision.

### B.  Factual Background

Doe is a student and student instructor at OSU. (Verified Am. Compl. at ¶ 4). The preliminary conference Doe seeks to enjoin was brought about as a result of a complaint by his ex-girlfriend, a student at Capital University (hereinafter, "Capital Student"). The two were romantically involved during the summer of 2015 but ended their relationship in late August 2015. (Pl.'s Mot. for TRO & Prelim. Inj. at 2, doc. 3). On October 1, 2015, the Capital Student reported to the Capital University Police that she was being sexually harassed by an ex-boyfriend who posted pictures of her to a public website. (Verified Am. Compl. Ex. 4 at 1, doc. 1-7). The Capital University Police took no enforcement action, but on October 8, 2015, the Dean of Students at Capital University sent Doe a letter informing him of the allegations and that he was "no longer welcome to visit this university without my express permission." (Verified Am. Compl. Ex. 5 at 1, doc. 1-8). On October 4, 2015, the Capital Student filed a police report with the Dublin Police Department, which contains the following report of her allegations:

> "her ex-boyfriend, [REDACTED] posted her phone number and pictures of her on various social media websites after their breakup. [REDACTED] also posted a

> photoshopped picture of [REDACTED] face on an unknown female's naked body. . . . On October 1st, she found out that her contact information from various social media sites . . . as well as her cell phone number was posted on a website named 4chan. . . . Due to her information being posted on this website, [REDACTED] stated recieving (sic) text messages from random phone numbers, asking how old she was, and requesting to chat with her."

(Verified Am. Compl. Ex. 6 at 3, doc. 1-9). The Dublin Police Department took no enforcement action and considered the case closed. (*Id.* at 4).

On October 26, 2015, Doe received a letter from the OSU Office of Student Life informing him that "Student Conduct has received information regarding an incident in which you may have been involved. It is alleged you have violated The Ohio State University's Code of Student Conduct. Therefore, it is requested you set up a preliminary conference." (Verified Am. Compl. Ex. 1, at 1, doc. 1-4). This "request" has some teeth, as the same letter informed Doe that "Failure to do so [by November 2, 2015] will result in a disciplinary hold being placed on your student account . . . [which] may prevent you from scheduling classes, viewing grades, receiving transcripts and diplomas, or receiving refunds." (*Id.*). Attached to the letter were the Statement of Student Rights and an outline of OSU's Hearing Procedures. (*Id.* at 3–6). OSU informed Doe it was alleged he violated three sections of the Code of Student Conduct: Stalking, Sexual Harassment, and Sexual Exploitation. (*Id.* at 1). The letter is not a notice to Doe of disciplinary charges being brought against him; OSU states that the purpose of the preliminary conference "is to gather information to determine whether charges are warranted." (*Id.*).

### C. OSU's Policies & Procedures

Accompanying the October 26 letter, OSU attached two documents: one entitled "Statement of Student Rights" and another entitled "Hearing Procedures." (*Id.* at 3–6). The Statement of Student Rights describes the process for administering notice of university charges and the hearing process. (*Id.* at 3–5). The Hearing Procedures describe just that, such as who may

attend, what may be presented, what standards are employed, and when expedited review is appropriate. (*Id.* at 6).

The Code of Student Conduct is the comprehensive set of rules governing student conduct at OSU, and it contains the provisions laid out in the Statement of Student Rights and the Hearing Procedures documents sent to Doe. It starts with a section entitled "Jurisdiction," which states: "The code applies to the on-campus conduct of all students . . . . The code also applies to the off-campus conduct of students . . . in direct connection with: . . . E. Any activity in which a police report has been filed . . . ." (Verified Am. Compl. Ex. 2 at 1, doc. 1-5). One category of "Prohibited Conduct" is "Sexual Misconduct," which OSU defines generally as "[p]hysical contact or other non-physical conduct of a sexual nature in the absence of clear, knowing and voluntary consent." (*Id.* at 3). Other sections of the Code prescribe the procedures for: initiating and investigating code violations, (3335-23-05), filing a complaint and initiating charges, (3335-23-06), providing notice of charges, (3335-23-07), an administrative decision, (3335-23-08), notice of a hearing and requesting postponement, (3335-23-09), hearing procedures, (3335-23-10), attendance, (3335-23-11), a record of proceedings, (3335-23-12), hearing bodies, (3335-23-13), sanctions, (3335-23-17), the appellate process, (3335-23-18), and the authority of the vice president of student life. (3335-23-22). (*Id.* at 6–15).

## II.     Conclusions of Law

Doe moves for a temporary restraining order and a preliminary injunction.

When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). These four factors are just that, guiding factors, not unbending prerequisites. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992)). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Id.* (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### A. Doe has not shown a strong likelihood of success on the merits

To establish a likelihood of success on the merits, "a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). A plaintiff must "establish[] a substantial likelihood or probability of success on the merits." *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000), *overruled on other grounds by 729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485 (6th Cir. 2008)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration*, 511 F.3d at 543 (quoting *Six Clinics*, 119 F.3d at 402).

The Court finds that none of Doe's arguments, however construed, have a likelihood of success on the merits. Doe lists three counts in his verified complaint. Count I is for a declaratory judgment that "OSU has no jurisdiction to compel the Plaintiff to proceed or to further investigate the Plaintiff." (Verified Am. Compl. at 10, doc. 13). Count II is made under 42 U.S.C. § 1983 for violation of the Due Process Clause of the United States Constitution. (*Id.* at 10–12). Count III is for an injunction "from this Court prohibiting the imposition of any investigation, or reporting of, any disciplinary actions under the OSU Code of Student Conduct and Sexual Misconduct Policy against Plaintiff." (*Id.* at 12–13). In his Verified Complaint and Motion, Doe does not separate out his claims, but OSU attempts to categorize them as either substantive- or procedural-due process claims. (Def.'s Mem. in Opp'n at 13, 19, doc. 7). In his reply brief, Doe appears to agree with this categorization. (Pl.'s Reply, doc. 12).

None of Doe's claims are likely to succeed on the merits for a number of reasons. First, no matter how construed, some of Doe's claims are unripe. Second, one potentially ripe procedural-due-process claim—the claim that OSU lacks jurisdiction—is unlikely to succeed on the merits. Third, one potentially ripe substantive-due-process claim—that any production of records of this matter will invade Doe's privacy and damage his reputation—is unlikely to succeed on the merits. Fourth, Doe's Ohio Constitution claim likely fails as a matter of law.

Plaintiff's main argument is this: OSU lacks jurisdiction to initiate disciplinary proceedings against Doe because the *complainant* is a Capital University student—not an OSU student and there is not a sufficient nexus between the alleged misconduct and Doe's status as a student and student instructor at OSU. Doe alleges:

> "[t]he violation of due process occurs because the Plaintiff is not subject to the OSU Code of Conduct and Sexual Misconduct Policy in his particular circumstance. The Complainant's status in relation to OSU does not meet the threshold of establishing the jurisdiction over the Plaintiff either in persona (sic)

> or in rem. The Complainant has no threshold relationship of any kind with the Defendant OSU to establish OSU's jurisdiction over Plaintiff. For this recited reason, the process being exercised against the Plaintiff by OSU is a not fundamentally fair and reliable process."

(Verified Am. Compl. at 10). The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids any State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Two types of due process emanate from this clause: substantive and procedural. Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Procedural due process requires the government to use fair procedures when depriving an individual of life, liberty, or property. Specifically, it requires the government to "provide that individual with notice of the proposed action and an opportunity to be heard." *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 649 (6th Cir. 2015) (quoting *Morrison v. Warren*, 375 F.3d 468, 473 (6th Cir. 2004)). The Court finds that Doe fails to show he has a probability of success on the merits of either type of due-process claim.

### 1. Some of Doe's claims are unripe

OSU has initiated no true disciplinary process against Doe. To enjoin the process now would be to make his complaint self-fulfilling: OSU would be enjoined from using its normal disciplinary proceedings, including sending notice and holding a hearing, the general requirements of procedural due process. To the extent Doe makes any argument about the inadequacy of OSU's process, his argument is unripe.

Ripeness turns on two factors: "the fitness of the issues for judicial decision and the hardship on the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S.

136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). To determine whether Doe's claims are ripe, the Court considers three factors: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012).

"The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). "A claim is not ripe if it involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Peloe v. Univ. of Cincinnati*, No. 1:14-CV-404, 2015 WL 728309, at *5 (S.D. Ohio Feb. 19, 2015) (analyzing ripeness of due-process claim) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

Because (1) it is unlikely that much of the hardship alleged by Doe will come to pass, (2) the factual record is not adequately developed, and (3) the hardship to the parties will be minimal if OSU proceeds in the absence of an injunction, most of Doe's claims are unripe. Doe's substantive-due-process claims are unripe because he has not shown that any fundamental right is likely to be infringed by any conduct by OSU. Only one of Doe's claims is likely ripe: his procedural-due-process claim that OSU lacks jurisdiction to initiate a proceeding against him. To the extent Doe alleges other procedural-due-process arguments, they are unripe because he has yet to be deprived of any liberty or property, let alone has OSU failed to provide due process.

To the extent Doe asserts a due-process claim regarding the disciplinary process and right to an appeal of an adverse finding by OSU, (Pl.'s Mot. at 7, doc. 3), Doe's claims are unripe. The

appeal process contemplated by OSU Code of Student Conduct is an *appeal* from a *decision*. (OSU Code of Student Conduct § 3335-23-18, PL.'s Ex. 2 at 12–13, doc. 1-5). Here, there has been no initiation of charges, no hearing, no decision, no sanction; therefore, there can be no appeal. An appeal in this matter is contingent on many events occurring in sequence and to the detriment of Doe for the possibility of an appeal to exist. Therefore, these claims are unripe, even at this point, where Doe seeks a preliminary injunction. Doe's substantive-due-process claim may indeed also be unripe, but because of its complexity, the Court analyzes it separately.

### 2. Doe's procedural-due-process claim is unlikely to succeed on the merits

Doe's procedural-due-process claim is that OSU lacks jurisdiction to investigate and discipline Doe and that, by virtue of initiating any type of investigative or disciplinary proceeding against Doe, OSU violates the Due Process Clause.

> To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). The disciplinary process of universities does typically implicate the Due Process Clause. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005). Disciplinary processes implicate due process because they have the potential to deprive a student of either "the liberty interest in reputation" or "the property interest in education benefits temporarily denied." *Goss v. Lopez*, 419 U.S. 565, 576 (1975) (10-day suspension implicates due process); *see also Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245, 1254 (E.D. Mich. 1984) ("Since plaintiff was threatened with the loss of a protected interest, he was entitled to the protection of the due process clause."), *aff'd*, 787 F.2d 590 (6th Cir. 1986) (per curiam).

OSU argues that the Due Process Clause is not implicated here because "there is nothing more than the initiation of an investigation." (Def.'s Mem. in Opp'n at 20, doc. 7). OSU further argues that Doe has failed "to establish that he has a liberty or property interest in not being investigated by Ohio State." (*Id.* at 19). Couched this way, OSU is right; but that version of events ignores one important fact.

The preliminary meeting is one that OSU argues is "*not* an adjudicatory hearing or otherwise any type of 'hearing' that could result in any deprivation of a liberty or property interest of Doe." (*Id.* at 20–21). This misses a critical detail. While the October 26 letter initially "request[s] you set up a preliminary conference," it later informs Doe that "[f]ailure to do so will result in a disciplinary hold being placed on your student account." (Pl.'s Ex. 1 at 1, Doc. 1-4). The letter further informs Doe that "a disciplinary hold may prevent [him] from scheduling classes, viewing grades, receiving transcripts and diplomas, or receiving refunds." (*Id.*). Preventing a student from scheduling classes and receiving a diploma sounds a lot like a suspension in that it deprives him of two primary benefits of being a student. OSU defines a suspension as "a sanction that terminates the student's enrollment at the university for a specified period of time." (Code of Student Conduct § 3335-23-17 (B), Pl.'s Ex. 2 at 11, doc. 1-5). The Court finds that, for purposes of the present motion, the threat of a "disciplinary hold" is tantamount to the threat of a suspension, and since a suspension of educational benefits implicates a property interest, *see Goss*, 419 U.S. at 574, OSU's threat of a disciplinary hold implicates the Due Process Clause.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Generally, the state must "provide a

person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

Doe claims little about the insufficiency of the investigative or disciplinary process outlined in the OSU Code of Student Conduct. Doe argues, simply, that OSU lacks "jurisdiction" to even investigate him for the alleged violation of the Code of Student Conduct. Most due-process claims require the Court to analyze what process was due; this claim requires the Court to analyze who has the authority to provide the process.

Doe makes two arguments—neither of which he supports with any authority—that OSU lacks jurisdiction. First, he argues that it is the Capital Student's lack of a relationship with OSU that limits OSU's jurisdiction over Doe. He argues that since the Capital Student has no relationship with OSU—she is not a vendor, instructor, student, or visitor—OSU lacks the ability to remedy her complaint; therefore, it has no jurisdiction. (Pl.'s Reply at 7, doc. 12). Doe also argues that the statute empowering OSU to regulate student conduct should be read to apply a geographical limit on OSU's power, delimiting its jurisdiction by its campus boundaries because the section is entitled "Authority to maintain law and order on campus." (Pl.'s Reply at 4) (citing Ohio Rev. Code § 3345.21).

At its most basic, jurisdiction is about power over a defendant. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("[T]he jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person."). So what power does OSU have? OSU is a state university. Ohio Rev. Code § 3345.011. The Code instructs the "board of trustees of any college or university which receives any state funds . . . [to] regulate . . . the conduct of the students . . . so that law and order are maintained and the college or university may pursue its educational objectives and programs

in an orderly manner." Ohio Rev. Code § 3345.21. The board is to do so in part by "adopt[ing] rules for the conduct of the students." *Id.* The Code further instructs the board to "provide for the administration and enforcement of its rules." *Id.* One of those rules is about jurisdiction. It says, under the heading "Jurisdiction": "The code applies to the on-campus conduct of all students . . . . The code also applies to the off-campus conduct of students . . . in direct connection with: . . . E. Any activity in which a police report has been filed . . . ." (Verified Am. Compl., Ex. 2 at 1, doc. 1-5).

Doe was named in two police reports: one by the Capital University Police Department and one by the Dublin Police Department. (Verified Am. Compl., Ex. 4 at 1, doc. 1-7; Ex. 6 at 1–4, doc. 1-9). The Ohio Revised Code empowers OSU to promulgate rules to regulate the conduct of its students, and its rules clearly define its jurisdiction to include off-campus incidents in which a police report has been filed; therefore, Doe falls within OSU's definition of its jurisdiction. (Verified Am. Compl., Pl.'s Ex. 2 at 1, doc. 1-5). The only procedural-due-process question presented by Doe is whether OSU's exercise of its jurisdiction over off-campus incidents involving its students in which a police report has been filed goes beyond what the statute provides.

Without citing any authority, Doe argues that the Ohio Revised Code does not give OSU jurisdiction to regulate this behavior. (Pl.'s Reply at 4). The lack of authority for this argument is unsurprising after the Court's independent analysis of the issue. In some cases, neither the parties nor the court ever raise the issue, seemingly taking for granted the university's authority to regulate its students' off-campus behavior. *See, e.g.*, *Flaim*, 418 F.3d at 632 (affirming district court's denial of due-process claim where medical student was expelled after off-campus arrest and later conviction). Courts that do analyze the issue usually find that universities *may* regulate

the wholly off-campus activities of their students to the extent that regulation contributes to the universities' (usually broadly defined) mission. *See Hill v. Bd. of Trustees of Michigan State Univ.*, 182 F. Supp. 2d 621, 627 n.2 (W.D. Mich. 2001) ("Hill fails to cite any case holding that a university violates the Constitution by suspending a student for off-campus acts. This Court doubts such a case exists because universities typically take into consideration many off-campus acts in deciding whether to admit or retain a student."); *Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 126 (D. Me. 2004) ("The University's legitimate interest in punishing the student perpetrator of a sexual assault or protecting the student victim does not end at the territorial limits of its campus."). And courts do not merely consider whether a university has a "legitimate interest"; they frequently consider whether the university's action is within its grant of power by the state legislature. *See Furey v. Temple University*, 884 F.Supp 2d 223, 248 (E.D. Pa. 2012) (permitting university to exercise jurisdiction over student for off-campus misconduct noting that state code provided a jurisdictional buffer of 500 yards, in which the disciplined behavior occurred).

Here, OSU has both a grant of power under state law to investigate Doe and a legitimate interest in investigating alleged acts of sexual misconduct by one of its students. Accepting Doe's argument, that a student's off-campus activity cannot serve as the basis for an investigation by the university, would appear to be a departure from the present state of the law. And since Doe presents no authority supporting his position, it seems unlikely that the Court would accept such a departure from its sister courts' reasoning. It therefore is unlikely Doe will succeed on the merits of his procedural-due-process claim.

Doe also argues that OSU's definition of its own jurisdiction is "constitutionally overbroad" and "subject to potential selective abuse and is virtually unenforceable." (Pl.'s Mot.

13

for TRO & Prelim. Injunc. at 5–6, 8) Whether or not OSU's definition of its jurisdiction could be abused is conjecture and not an issue properly before the Court. It is enough for purposes of the present motion for the Court to find that OSU has the authority to investigate Doe under the specific circumstances alleged in the complaint. To the extent that the Court has not already addressed Doe's constitutional arguments, it will not do so further. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). The Court will not put flesh on Doe's skeletal arguments.

### 3. Doe's substantive-due-process claim is unlikely to succeed on the merits

Distinct from procedural due process, substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Constitution prohibits the government from violating an individual's substantive-due-process rights in two ways: "(1) official acts that are unreasonable, arbitrary and cause a deprivation of a substantive right specified in the Constitution, or (2) official acts that may not take place no matter what procedural protections accompany them." *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989) (citing *Wilson v. Beebe*, 770 F.2d 578, 583–86 (6th Cir. 1985) (quotation marks omitted)). The substantive rights protected by the Due Process Clause are those fundamental rights so "implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Conn.*, 302 U.S. 319, 325 (1937))

(internal quotation marks omitted). The list of fundamental rights is short: "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." *Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000). "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Id.* at 574. "Government actions that do not affect fundamental rights or liberty interests . . . will be upheld if it they are rationally related to a legitimate state interest." *Id.* at 575. The substantive and fundamental right identified by Doe is his right to his reputation, or alternatively, his right to privacy. (Def.'s Reply at 9–11, doc. 12).

Doe also alleges that some of OSU's conduct falls under the second type of substantive-due-process protection, that is, protection from conduct "so excessive or extreme that it shocks the conscience." But "only the most egregious official conduct" shocks the conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). There is no evidence that OSU's conduct was "inspired by malice or sadism" nor does it amount to a "brutal and inhumane abuse of official power." *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Because OSU has done little more than initiate an investigation into one of its students for alleged misconduct, Doe is highly unlikely to succeed on the merits of his "shocks-the-conscience" claim.

While Doe is correct that his reputation is a protectable interest, he supplies no authority holding that the right to one's reputation is a *fundamental* right.[1] Court has found none. The list of fundamental rights is short, and reputation is not on it. *See Lambert v. Hartman*, 517 F.3d 433,

---

[1] Courts do recognized a liberty interest in one's good name and reputation under procedural due process. *See Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). The remedy for this type of deprivation is a name-clearing hearing. *Id.* at 320.

444 (6th Cir. 2008). Even if a liberty interest exists in "one's reputation[, it] does not necessarily mean that such an interest is either 'fundamental' or 'inherent in the concept of ordered liberty.'" *Lambert*, 517 F.3d at 444 (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)). "Only when 'fundamental' rights are implicated does a privacy concern take on constitutional dimensions." *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995). Since Doe does not allege a deprivation of a fundamental right, this reputational concern has no constitutional dimension.

The right to privacy, however, does occasionally take on a constitutional dimension. There are two types of interests protected by the right to privacy: (1) "the individual's interest in independent decision making in important life-shaping matters[; and (2)] the individual's interest in avoiding disclosure of highly personal matters." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998). The first type concerns fundamental rights to autonomy, like choice in marriage, procreation, and child rearing. *Id.* (collecting cases). This first type is not implicated here. The second type—the interest in avoiding disclosure of highly personal matters—appears to be the interest Doe alleges will be impinged by OSU's investigation.

This claim is simple: Doe is concerned about the creation of records memorializing an embarrassing moment in his life. Doe alleges, baldly, that this process will "create a written record and evidentiary file available to *anyone in litigation and prospective employers*." (Pl.'s Reply at 31–32, doc. 12) (emphasis added). Doe only speculates why this would be the case. Doe argues that the law could change, (Pl.'s Reply at 6), that the Family Education Rights and Privacy Act ("FERPA")'s lack of an across-the-board evidentiary privilege is tantamount to making his record available to "anyone in litigation," (Pl.'s Reply at 5–6, 32), and that prospective employers might access his record by requesting a FERPA waiver. (Pl.'s Reply at 15, 17). Doe argues that future employers might somehow access OSU's records to retrieve his

disciplinary file via a "security background check." (Pl.'s Reply at 15). This, Doe argues, "may chill the Plaintiff in the future from applying to a whole class of jobs." (Pl.'s Reply at 17).

All of Doe's speculation fails to overcome the simple fact "that disciplinary records of a student are FERPA protected." (Pl.'s Reply at 9). OSU agrees. (Def.'s Resp. at 29–30, Doc. 7). The Sixth Circuit agrees. *See United States v. Miami Univ.*, 294 F.3d 797, 813 (6th Cir. 2002) ("[W]e must conclude that student disciplinary records remain protected under the term 'education records.'"). The Court agrees. *See* 20 U.S.C. § 1232g(b)(1) (prohibiting funding to educational institutions that have a "policy or practice" of releasing education records without consent of students' parents). And because the records are protected from public disclosure by FERPA, the initial production of those records does not implicate the privacy interest in avoiding disclosure of highly personal matters.

Doe's claim that OSU will violate the Due Process Clause by producing records of the disciplinary process and thus violate his right to privacy or reputation are ill-founded. These records are protected from public disclosure by FERPA. Since the records have FERPA protection, OSU's procedure does not pose a sufficiently grievous threat to Doe's interest to likely establish a constitutional violation. *See Lambert*, 517 F.3d at 600. Doe's substantive-due-process claim hangs together by his speculative arguments that FERPA law might change, or he might be asked for a FERPA waiver, or someone "in litigation" might be able to access his records. But this is not enough, particularly at the preliminary-injunction stage, to establish a likely violation of a fundamental right.

Lacking a fundamental right, the Court assesses Doe's substantive-due-process claim under the rational-basis standard. "In the context of school discipline, a substantive due process claim will succeed only in the rare case when there is no rational relationship between the

punishment and the offense." *Seal*, 229 F.3d at 575 (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)) (internal quotation marks omitted). This is not a rare case. There exist many rational bases for OSU's investigation of Doe and his alleged conduct: (1) the U.S. Department of Education's interpretation of Title IX that requires universities to investigate allegations that may implicate Title IX, U.S. Dep't of Educ., Office of Civil Rights Dear Colleague Letter, dated April 4, 2011, available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf; (2) the instruction to university boards to "regulate . . . the conduct of the students . . . so that . . . the college or university may pursue its educational objectives and programs in an orderly manner, Ohio Rev. Code § 3345.21; and (3) OSU's interest in providing a safe environment for all of its students, including taking seriously charges of sexual misconduct by one of its students.

Doe has failed to show an arbitrary deprivation of a constitutional right or a conscience-shocking government action; therefore, his substantive-due-process claim is unlikely to succeed on the merits.

### 4. Doe's Ohio Constitution claim is unlikely to succeed on the merits

Doe is unlikely to success on the merits of his Ohio Constitution claim, which he alleges in parallel with his federal due-process claim. But "a claimed violation of a state constitutional right is not cognizable under § 1983." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). And while not cognizable under § 1983, it is perhaps cognizable under Count I of Doe's Amended Complaint for Declaratory Judgment. But since "[t]he analysis of 'due course of the law' claims made under the Ohio Constitution is the same as that of 'due process' claims under the United States Constitution," *Nuesse v. Kline*, No. 3:09 CV 329, 2009 WL 1850319, at *6 (N.D. Ohio June 26, 2009) (quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 201,

883 N.E.2d 377 (Ohio 2008)), Doe's Ohio Constitution claim fares no better than his claims under the United States Constitution. Doe's Ohio Constitution claim is therefore unlikely to succeed on the merits.

### B. No irreparable injury is likely to occur

For this factor to count for Doe, he must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Doe alleges he will suffer irreparable injury without the benefit of an injunction. Doe alleges that he will undergo "humiliation, extreme anxiety, mental distress and damage to his reputation." (Verified Am. Compl. at 7). These injuries, he alleges, will only be exacerbated as the proceedings are memorialized by documents produced by the investigative and disciplinary process—documents that may be publicly available. (Verified Am. Compl. at 7). And the constitutional violations are, Doe argues, irreparable injuries themselves. (Pl.'s Reply at 8–9).

The production of disciplinary records by OSU is not an irreparable injury. To start, "student disciplinary records are education records and therefore are protected from disclosure." *United States v. Miami Univ.*, 294 F.3d 797, 813 (6th Cir. 2002). So the records "memorializing" the disciplinary process are not publicly available and would thus not contribute to the irreparable injury Doe alleges. Furthermore, the police reports containing the Capital Student's allegations are already a matter of public record, so the availability of these documents is irrelevant to the question of irreparable injury.

A plaintiff can show an irreparable injury sufficient to satisfy the preliminary-injunction standard if "an alleged deprivation of a constitutional right is involved." Wright & Miller, 11A *Fed. Prac. & Proc. Civ.* § 2948.1 (3d ed.); *see Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm); *Spencer v. Blackwell*, 347 F. Supp. 2d 528, 537 (S.D. Ohio 2004) (finding irreparable harm where Ohio statute would impair right to vote); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). But if a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit." *Overstreet*, 305 F.3d at 578. The Court must look elsewhere for irreparable harm. *See id.* at 578–79.

Because Doe has not shown he is likely to succeed on the merits of his constitutional claims, he is not entitled to a presumption of irreparable harm. Doe has further failed to show it is likely he will suffer other irreparable harm to his reputation as a result of the proceedings. This factor weighs in favor of denying the motion for preliminary injunction.

### C.  Issuing an injunction may cause limited harm to others

Granting Doe's motion is likely to cause harm to others. OSU argues that it would (1) effectively bar OSU from implementing its own conduct policies; and (2) chill and dissuade individuals from reporting misconduct. (Def.'s Mem. in Opp'n at 31–32). Doe counters that the Court can grant the injunction without passing on the issue of OSU's jurisdiction. (Pl.'s Mot. at 9) ("The determination of jurisdiction is under no compelling timeline."). But Doe "asks the Court to declare that OSU has no jurisdiction to compel Plaintiff to proceed or to further investigate the Plaintiff." (Verified Am. Compl. at 10).

This Court's injunction would bar OSU from even investigating the off-campus misconduct of one its students. Granting such a motion would cast doubt on OSU's power to regulate its student body, including investigating and disciplining its students for sexual misconduct. And since guidance by the Office of Civil Rights on Title IX requires OSU to investigate allegations of off-campus sexual misconduct, not doing so could jeopardize its federal funding. (Def.'s Mem. in Opp'n at 22–24). *See Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001) ("A college's or university's interest in maintaining a hostile-free learning environment, particularly as it relates to its Title IX funding, is well recognized."). The Court finds that issuing the injunction could cause harm to others, which weighs in favor of denying the injunction.

### D.  Issuing an injunction would not serve the public interest

The public interest would not be served by issuing a preliminary injunction. Doe argues that "the public is well served by knowing specifically when OSU may have control over their constitutional interests and rights." (Pl.'s Mot. at 10). OSU counters that Doe's inability to show a substantial likelihood of success on the merits on his constitutional claim will not serve the public's interest in the protection of constitutional rights generally. But "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib.*, 154 F.3d at 288. As with the harm-to-others factor, if the plaintiff is unlikely to prevail on his constitutional claim, this factor weighs in favor of denying the injunction. *See Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) ("if the regulation in question is likely to be deemed constitutional, the public interest will not be harmed by its enforcement.").

## III.      Conclusion

All of the factors weigh in favor of denying the motion. The Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is therefore DENIED. (Doc. 3).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE:  January 22, 2016